IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

OREGON STATE BAR PROFESSIONAL
LIABILITY FUND,

                Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES and
KATHLEEN SEBELIUS, in her official
capacity as Secretary of the Department of
Health and Human Services,

                Defendant.

No. 03:10-CV-1392-HZ

OPINION & ORDER

Janet Marie Schroer
Matthew J. Kalmanson
Hart Wagner, LLP
1000 SW Broadway, 20th Floor
Portland, OR 97205

      Attorneys for Plaintiffs

/ / /
/ / /

1 - OPINION & ORDER

Sean E. Martin
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

      Attorney for Defendants

HERNANDEZ, District Judge:

      Plaintiff Oregon State Bar Professional Liability Fund ("PLF") has moved for summary judgment on all four of its claims for relief.  Defendants United States Department of Health and Human Services and the Secretary of the Department, Kathleen Sebelius, (collectively "DHHS") have cross moved for summary judgment on all of Plaintiff Oregon State Bar PLF's claims. Based on the following I grant Plaintiff's motion and deny Defendants' motion.

BACKGROUND

      This case centers on whether the Oregon State Bar PLF must follow reporting requirements imposed by the Medicare statutes.  The PLF is a non-profit corporation that provides legal malpractice insurance for all active members of the Oregon State Bar.  Pl.'s Mem. Supp. Mot. Summ. J. ("PLF MSJ"), 6.  The legal malpractice insurance covers an attorney's errors and omissions that occur while providing legal services.  Id.

      Medicare is a federally funded program of health insurance for the elderly and disabled. Defs.' Mem. Supp. Cross Mot. Summ. J. ("DHHS MSJ"), 4.  In 1980, the Medicare Secondary Payer Act was enacted to reduce the increasing cost of Medicare.  The Act made Medicare secondary to other insurance coverage by (1) not paying benefits when a primary plan is reasonably expected to pay for a service covered by Medicare and (2) requiring reimbursement for conditional payments made by Medicare.  42 U.S.C. § 1395y(b)(2)(B).  In 2007, Congress passed the Medicare, Medicaid and SCHIP Extension Act ("Extension Act").  PLF MSJ, 3.  As

2 - OPINION & ORDER

applicable here, the Extension Act added an investigatory and reporting requirement to the

Medicare Secondary Payer Act.  The Extension Act requires an "applicable plan" to determine

whether a claimant is entitled to Medicare benefits and to report the fact to the Secretary of the

Department of Health and Human Services.  42 U.S.C. § 1395y(b)(8)(A)-(B).  An entity that is

required to report under the Extension Act is called a Responsible Reporting Entity ("RRE").

On July 28, 2010, the Oregon State Bar PLF wrote DHHS to argue that it was not an

applicable plan under the Extension Act, and thus had no reporting duty.  Administrative Record[1]

("AR") 47-48.  The PLF requested a formal opinion that the Extension Act's reporting

requirement does not apply to the PLF.  Id.  On August 20th, DHHS responded that applicable

plans included liability insurance, and consequently, the PLF was an applicable plan under the

Extension Act.  Id. at 49-50.  The PLF filed this action on November 12th and brought the

following claims:  (1) declaratory judgment that the PLF is not an applicable plan or Responsible

Reporting Entity ("RRE") under the Extension Act, (2) Secretary Sebelius acted *ultra vires* in

determining that the PLF is an RRE, (3) Secretary Sebelius violated the Administrative

Procedure Act ("APA") in determining that the PLF is an RRE, and (4) this Court may review

Secretary Sebelius' determination concerning the PLF.  First Am. Compl., 6-7.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

---

[1] Defendants DHHS has filed an Administrative Record.  Dkt. # 28.

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

The outcome of this case depends on the interpretation of the relevant Medicare statutes.

I.     Medicare Statutes

A.     Medicare Secondary Payer Act

Under the Medicare Secondary Payer Act, Medicare is secondary to other plans in the payment of claims for a medical "item or service".  42 U.S.C. § 1395y(b)(2).  Medicare will not pay if

> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or *liability insurance policy or plan* (including a self-insured plan) or under no fault insurance.

Id. at § 1395y(b)(2)(A)(i)-(ii) (emphasis added).  If subparagraph (i) applies, then a "primary plan" is a "group health plan or large group health plan".  Id. at § 1395y(b)(2)(A).  If subparagraph (ii) applies, then a "primary plan" is a "workmen's compensation law or plan, an automobile or *liability insurance policy or plan* (including a self-insured plan) or no fault insurance".  Id. at § 1395y(b)(2)(A) (emphasis added).  Because Plaintiff offers legal malpractice insurance for attorneys, subparagraph (ii) is the relevant portion of the statute.

There is, however, an exception to Medicare always being as a secondary payer.  Medicare will make a conditional payment under certain circumstances.  These payments are conditional because Medicare expects reimbursement from the primary plan that had responsibility to pay for the item or service.  Id. at § 1395y(b)(2)(B)(ii).  Responsibility for payment of the item or service is demonstrated "by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release . . . of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."  Id.

Medicare will pay conditionally "if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly[.]"  Id. at § 1395y(b)(2)(B)(i).  As explained above, "primary plan" refers to "a workmen's compensation law or plan, an automobile or *liability insurance policy or plan* (including a self-insured plan) or no fault insurance" because subparagraph (ii) is referenced.  Id. at § 1395y(b)(2)(A)(ii) (emphasis added).  In

short, as applicable to this case, Congress ordered Medicare to make a conditional

payment when a primary plan, i.e., liability insurance policy or plan, is not reasonably

expected to make payment for an item or service promptly.

      B.     Medicare, Medicaid and SCHIP Extension Act

In 2007, the Medicare Secondary Payer Act was amended by the Medicare, Medicaid and

SCHIP Extension Act to include a reporting requirement for primary plans.  42 U.S.C. §

1395y(b)(7)-(8).  The reporting requirement was added by Congress to "improve [DHHS's]

ability to identify beneficiaries for whom Medicare is the secondary payer by requiring group

health plans and liability insurers to submit data[.]"  153 Cong. Rec. S15835 (Dec. 18, 2007)

(statement of Sen. Charles Grassley).  At DHHS's request, I take judicial notice of testimony

from the Government Accountability Office ("GAO").  DHHS Resp., 6 n1.  The GAO believed

that the reporting requirement would help DHHS "identify which payments were made by

Medicare that should have been the primary responsibility of another payer."  GAO Testimony

to Congress, Medicare Secondary Payer, June 22, 2011.  It is evident that Congress added the

reporting requirement so that DHHS could recuperate conditional payments that were made by

Medicare.

The Extension Act requires group health plans to submit information pursuant to §

1395y(b)(7) and more pertinent to this discussion, requires information to be submitted by or on

behalf of liability insurance pursuant to § 1395y(b)(8).  Concerning liability insurance plans,

Congress mandates that an "applicable plan" shall determine whether the claimant is entitled to

Medicare benefits and if so, to submit information to DHHS for the coordination of benefits.  Id.

at § 1395y(b)(8)(A)(i)-(ii).  An applicable plan is defined as

     the following laws, plans, or other arrangements, including the fiduciary or
     administrator for such law, plan, or arrangement:

(i) *Liability insurance* (including self-insurance).
(ii) No fault insurance.
(iii) Workers' compensation laws or plans.

Id. at § 1395y(b)(8)(F) (emphasis added).  This definition of "applicable plan" mirrors the definition of "primary plan" in § 1395y(b)(2)(A)(ii) that was discussed previously.

II.    Statutory Interpretation

The dispute between the parties is whether the Oregon State Bar PLF is an applicable plan subject to reporting requirements.  There is no dispute that the Oregon State Bar PLF is a type of liability insurance.  DHHS Resp., 13.  Defendant DHHS argues that the plain language of the statute should end the inquiry because liability insurance is included in the definition of applicable plan.  Id. at 10.  Plaintiff Oregon State Bar PLF disagrees.  The PLF argues that considering the identical definitions of applicable plan and primary plan, it is not a primary plan that would ever be subject to a repayment obligation for conditional payments made by Medicare, and thus has no duty to report.  PLF MSJ, 13.

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'"  BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)).  Thus, my inquiry begins with the statutory text.  "If the statutory language is unambiguous and the statutory scheme is 'coherent and consistent,'" judicial inquiry must cease.  In re Ferrell, 539 F.3d 1186, 1190 n.10 (9th Cir. 2008) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)).  Resorting to legislative history as an interpretive device is inappropriate if the statute is clear.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005).

Applicable plan was expressly defined to include liability insurance.  However, the inquiry does not end there.  "[T]he words of the statute must be read in their context and with a view to their place in the overall statutory scheme."  <u>FDA v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 133 (2000) (quotation omitted).  Both parties agree that the reporting requirement under the Extension Act is meant to help Medicare recover conditional payments that were made when the primary plan was actually responsible for the payment.  DHHS Resp., 6; PLF MSJ, 13-14.  An applicable plan, which has been defined to include liability insurance, must report.  But considering the overall statutory scheme, the purpose of the reporting requirement, and the identical definitions of "applicable plan" and "primary plan", it is apparent that "applicable plan" is a plan that has primary responsibility for paying the medical item or service claimed and thus, could be subject to repayment obligations from conditional payments made by Medicare.

With this understanding of the statutory framework, I now turn to whether the PLF is an applicable plan that is subject to the reporting requirement.  There is no dispute that the PLF is liability insurance.  But, is the PLF a plan that has primary responsibility for items or services claimed by a Medicare beneficiary and as a result, could be subject to repayment obligations?  The PLF provides legal malpractice insurance for all Oregon attorneys.  AR 47.  With some exceptions, attorneys who practice in Oregon must purchase malpractice insurance from the PLF.  <u>Id.</u>  The PLF covers claims against attorneys who cause economic damage related to the provision of legal services.  AR 81-82.  The PLF does not cover claims of tortious conduct that results in bodily or emotional injuries.  AR 94.  A malpractice claim comes to the PLF years after an attorney has erred in the provision of legal services.  PLF MSJ, 15.  If the PLF pays a claimant, it is paying for a claim arising from legal malpractice, not health care services.  Under

these circumstances, the PLF will never have primary responsibility for paying items or services claimed by a Medicare beneficiary, and thus will never be subject to repayment obligations to DHHS.

DHHS argues that a malpractice claim involving a personal injury case could involve medical expenses paid conditionally by Medicare. DHHS Resp., 3. While this is true, I am still not convinced that the PLF would be an applicable plan that is subject to the reporting requirements. First, in a malpractice claim involving a personal injury case, the PLF does not have primary responsibility to pay for the claimant's medical injuries. That primary responsibility falls on the insurers who insure the parties involved in the incident. For example, in a car accident, the liability insurer of one or both parties involved in the accident would have primary responsibility. If the PLF becomes involved, it is because the attorney who represented one of the parties erred in the provision of legal services. As explained above, the PLF does not cover bodily or emotional injuries. Second, there is a significant time lag from when the person is injured in an accident and when the PLF pays out the claim for legal malpractice for attorney error in a personal injury case. While Medicare may have authorized a conditional payment after the accident, it is highly unlikely that Congress expected reimbursement from legal malpractice carriers. More likely than not, Congress expected the primary plan, i.e., the liability insurer of one or both parties involved in the accident, to reimburse DHHS for the conditional payment.

The PLF is not a liability insurance plan that Congress contemplated when it imposed reporting requirements for primary plans that have a repayment obligation to Medicare. I find that the PLF is not an applicable plan subject to reporting requirements mandated by the Extension Act.

/ / /

III.    Judicial Review

PLF's fourth claim for relief is a request for judicial review based on 42 U.S.C. §§ 405(g) and 1395ii.  Section 405(g) has a 60-day statute of limitation:

> Any individual, after any final decision . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision[.]

42 U.S.C. § 405(g).  DHHS asserts that PLF missed this 60-day deadline.  In July 2010, PLF had written DHHS for a determination of whether it was an applicable plan.  PLF received a response from DHHS on August 20, 2010.  DHHS argues that because PLF's complaint was filed on November 12th, more than 60 days past August 20th, this action is not timely.  DHHS Resp., 9-10.  PLF disputes that the August 20th letter was a final decision because it never received a hearing on the issue.  PLF Reply, 6.  I agree that there was no hearing and that the August 20th letter was not a final decision after a hearing.

DHHS next argues that a hearing may be waived by a court or an agency.  DHHS Reply, 6.  DHHS cites Shalala v. Ill. Council on Long Term Care, 529 U.S. 1 (2000), in support.  DHHS is correct that *the court* can deem procedural steps, such as a hearing, waived.  Id. at 24.  And while the agency may waive procedural steps in § 405(g), it is still up to the court to deem them waived.  Id.  There is no waiver of a hearing in this case.  Thus, I find that PLF's fourth claim is not barred by the statute of limitations.

IV.    Administrative Procedure Act ("APA") and Ultra Vires Claims

Given my ruling that the Oregon State Bar PLF is not an applicable plan that is subject to the reporting requirements of the Extension Act, I need not address whether Secretary Sebelius violated the APA claim or acted ultra vires in finding that the PLF is required to report.  Plaintiff's second and third claims are dismissed as moot.

CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment (#29) is granted for claims one and four, Defendant's cross motion for summary judgment (#32) is denied, and claims two and three are dismissed as moot.

IT IS SO ORDERED.


Dated this   29th     day of March, 2012.



/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

11 - OPINION & ORDER